# In the United States Court of Federal Claims

No. 12-385C
(Filed: June 7, 2013)[1]

```
*************************************
                                     *
NEUROGRAFIX, et al.                  *
                                     *
               Plaintiffs,           *
                                     *
       v.                            *
                                     *
THE UNITED STATES,                   *
                                     *
               Defendant.            *
                                     *
*************************************
```

## OPINION AND ORDER OF DISMISSAL

NeuroGrafix ("NG"), Neurography Institute Medical Associates, Inc. ("NIMA"), and Image-Based Surgicenter Corp. ("IBS") (collectively, "Plaintiffs") brought this suit alleging that the Defendant ("United States" or "Government") has made unauthorized use of U.S. Patent No. 5,560,360 (the "'360 Patent"). The '360 Patent relates to the field of magnetic resonance imaging ("MRI").[2] The United States has moved to dismiss the Complaint for lack of jurisdiction on the ground that the Plaintiffs lack standing. For the reasons that follow, the motion is GRANTED.

### I.   Background

#### a.  Allegations in the Complaint

The '360 Patent was issued on October 1, 1999. The University of Washington ("UW"), a public institution of higher education, is the owner by assignment of the '360 Patent. According to the Complaint, the Washington Research Foundation ("WRF") holds substantially all rights in the '360 Patent via exclusive license from UW. In turn, WRF allegedly licensed substantially all rights in the Patent to NG in December of 1998.

---

[1] This Opinion and Order was issued under seal on May 24, 2013. The parties were given an opportunity to review the Opinion in order to propose redaction of any competition-sensitive, proprietary, confidential, or otherwise protected information. The parties have informed the Court that no such redactions are necessary.

[2] The specifics of the Patent are irrelevant to the instant Opinion, so the Court will not address them herein.

The Complaint alleges that the rights in the '360 Patent have been divided into three fields of medicine via sublicenses from NG to NIMA and NIMA to IBS. NG is currently the exclusive licensee of the Patent in the field of non-human, non-surgical medicine. NIMA is the exclusive licensee in the field of human, non-surgical medicine. Finally, IBS is the exclusive licensee in the field of human, surgical medicine. Plaintiffs allege that they "have a legal right to enforce their rights under the patent, sue for infringement, and seek all available relief and damages."

The Plaintiffs claim that the Government, through the Department of Defense, the Department of Veterans Affairs, and possibly through a number of other departments and agencies, has infringed the '360 Patent. Specifically, the Plaintiffs claim that the Government has infringed the '360 Patent through "the performance of and provision of equipment and methods for peripheral nerve MR Neurography, diffusion anisotropy based tractography and DTI." Compl. at 4.

### b. The Motion and Procedural Posture

The Government moved this Court to dismiss the complaint for lack of jurisdiction. Generally put, the Government asserted that nothing in the Complaint proved that UW—via WRF—has transferred sufficient rights in the '360 Patent to the Plaintiffs to establish their standing to bring suit. The motion was initially filed in November of 2012.

Plaintiffs filed a response to the motion on December 17, 2012. Along with the response, Plaintiffs filed three sealed documents: a license between WRF and NG (the "WRF-NG Agreement"); a license between NG and NIMA; and a license between NIMA and IBS. In its reply, the Government observed that the '360 Patent is not mentioned anywhere in the WRF-NG Agreement.[3] It also observed that the WRF-NG Agreement was silent on the transfer to NG of the right to sue the Government. Plaintiffs then filed for leave to submit a sur-reply in response to new arguments raised by the Government. Leave was granted and the sur-reply was filed on January 17, 2013. Because it was the Government's motion, the Court decided that fairness required it be allowed the last word. Thus, on January 24, 2013, the Government filed a supplemental brief in response to the sur-reply.

After reviewing all of the filings, questions remained in the Court's mind as to whether jurisdiction was appropriate in this case. To this end, the Court ordered that Plaintiff submit certain additional evidence, which is described in further detail in the Court's February 5, 2013 Order. The documents submitted in response to that order include, *inter alia*: a Technology Administration Agreement between St. George's Hospital Medical School,[4] UW and WRF; an agreement between UW and WRF (the "UW-WRF Agreement"); and the original 1998 agreement between WRF and NG.[5] Once again, the Government moved for leave to file a brief

---

[3] Notably, both of the sublicenses indicate in their headers that the license was for "Patent: US 5,560,360 and related patent family."

[4] St. George's was an original assignee of the '360 Patent. It has assigned its rights in the '360 Patent to UW.

[5] The WRF-NG Agreement, dated 2012, replaced this 1998 agreement.

2

addressing Plaintiffs' new submissions, and the Court obliged. The Government's second supplemental brief was submitted on February 22, 2013.

## II.     Legal Standard

### a.     Rule 12(b)(1) Motions

A motion brought under Rules of the Court of Federal Claims ("RCFC") Rule 12(b)(1) challenges the Court's subject matter jurisdiction. *See* RCFC 12(b)(1). Standing is jurisdictional. *See Hoopa Valley Tribe v. United States*, 597 F.3d 1278, 1283 (Fed. Cir. 2010); *see also Myers Investigative and Security Services, Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue."). "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### b.     28 U.S.C. § 1498(a)

The Court of Federal Claims' jurisdiction over claims of governmental patent infringement is established by 28 U.S.C. § 1498(a). Pursuant to § 1498(a), the "owner" of a patent may bring suit against the Government to recover the owner's "reasonable and entire" compensation for the Government's use of the owner's invention. 28 U.S.C. § 1498(a). In order to qualify as an "owner," a plaintiff proceeding under § 1498(a) must have an interest equal to that which would support a lawsuit against a private defendant. *See E.W. Bliss Co. v. United States*, 253 U.S. 187, 191-92 (1920). This means that case law on the standing of a "patentee" to sue under 35 U.S.C. § 281 is instructive for purposes of determining whether a plaintiff in this Court is an "owner" for the purposes of § 1498(a).

The Federal Circuit has explained that there are three categories of standing for a potential plaintiff in patent cases: (1) those that hold all substantial rights in the patent; (2) those that hold exclusionary rights granted by the patent, but not all substantial rights in the patent; and (3) those that do not even hold exclusionary rights under the patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007). Only those entities which fall under the first category may sue without joining any other entities. *Id.* A party may be such a plaintiff even if title in the patent is not formally transferred: a conveyance of all substantial rights in the patent may allow a transferee to bring suit in its own name. *See Propat Int'l. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). In order to transfer all substantial rights, an agreement must "convey[] *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory." *Prima Tek II, LLC v. A-Roo Company*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (emphasis in original). Usually, "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration." *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010). The Court may look to both the substance of the rights granted as well as the intention of the parties. *Mentor H/S Inc. v. Medical Device Alliance Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).

Entities that fall under the second category may hold exclusionary or other rights in the patent, but not all substantial rights to the patent. In such cases, where the plaintiff may be the exclusive licensee of the patent, the plaintiff is injured when any other party makes, uses, sells, offers to sell, or imports the patented invention. *Morrow*, 499 F.3d at 1340. However, the exclusionary right "must be enforced through or in the name of the owner of the patent." *Id.*

Finally, the third category comprises those that own less than all substantial rights and lack even the right to exclude. Such entities are not injured by another party's making, using, or selling of the invention. *Id.* at 1341. In such cases, the standing deficiency cannot be cured, even by adding the patent owner to the suit. *Id.*

### III. Discussion

#### a. The Court May Go Beyond the Scope of the Complaint

As an initial matter, the Plaintiffs argue that, because the Complaint alleges facts sufficient to confer standing, nothing more is required from them. Pltfs. Resp. at 5. Plaintiffs summarize their Complaint, pointing out that they have alleged: that WRF holds all substantial rights in the '360 Patent; that NG, NIMA and IBS are the exclusive licensees in various fields of use; and that they (the Plaintiffs) have a legal right to enforce their rights under the license. *Id.* The Plaintiffs portray the Government's motion as a "facial challenge" to jurisdiction, such that the Court must "accept[] as true all of the non-movant's factual allegations and draw[] all reasonable inferences in a light most favorable to that party." *Id.*

The Government correctly argues that the Plaintiffs miss the mark. The Government's challenge is a *factual* one—not a facial one. The distinction is important. A facial challenge to jurisdiction is one in which the Court accepts as true the allegations of a complaint, and considers its power to entertain suit in light of those allegations. *See Cedars-Sinai Med. Ctr. V. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). The Government's example of a facial challenge is instructive: this Court may accept as true all of the allegations of a tort claim, but it still lacks jurisdiction to hear the case.

Alternatively, a factual challenge to jurisdiction is one in which the Court need not accept as true the facts alleged by a plaintiff in support of jurisdiction. First, the party challenging jurisdiction need only challenge the allegations; it need not present evidence controverting the jurisdictional allegations. *Id.* at 1584. Then, because the party seeking to invoke the Court's jurisdiction bears the burden of establishing that jurisdiction, *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936), the non-movant must come forward with evidence in support of jurisdiction; allegations alone are insufficient at this stage. *Cedars-Sinai*, 11 F.3d at 1584; *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing [standing.]").

Here, the Government challenges the Plaintiffs' allegations which might otherwise support standing. It does not accept the Plaintiffs' allegations as true. As such, it is plain that the challenge here is factual, rather than facial, and the Plaintiffs must provide evidence which

4

supports this Court's jurisdiction. The point is moot, however, because the Plaintiffs have submitted evidence which they believe supports their claim of standing.

### b. Ownership and Licensing of the '360 Patent

The '360 Patent has been subject to a number of assignments and licenses. Initially, it appears that the four inventors split their interests between St. George's and UW. That these two schools had received substantially all rights in the patents appears uncontroverted.

After the initial assignment by the inventors, the chain of title becomes murky. Among the documents Plaintiff submitted in response to the Court's order is a "Technology Administration Agreement," ("TAA") (Docket No. 34-5), which was executed in May of 1994.[6] Article 2.1 of the TAA provides that "St. George's agrees to assign to UW all right, title and interest" to the '360 Patent and related technology. Meanwhile, the Government has submitted PTO records that indicate that St. George's assigned its rights to UW on February 6, 2008. Whatever the actual date of the assignment from St. George's to UW, there is no dispute that UW owned all patent rights and could transfer the same.

The government disputes the allegation in the Complaint that WRF holds substantially all the rights in the '360 patent via exclusive license from UW. The Court, however, need not resolve this dispute, because, even if WRF holds substantially all the rights, the Court finds that the WRF-NG Agreement did not grant NG the right to sue the United States.

Specifically, in its first brief after Plaintiffs filed the WRF-NG Agreement, the Government asserted that the WRF-NG Agreement only granted NG the right to bring infringement actions against a "Third Party." WRF-NG Agreement at 9. The Agreement expressly provided a definition of "Third Party": "any individual, corporation, partnership or other business entity other than WRF, Licensee, Affiliates and Sublicensees." WRF-NG Agreement at 5. The Government argued that the United States doesn't fall within the contract's definition of Third Party, and as such, the WRF-NG Agreement did not confer upon NG the right to sue the United States for infringement.

The Plaintiffs contend in response that the Court should look to the intent of the parties, and "it is clear that WRF and NeuroGrafix's mutual intent at the time of contracting was to remove WRF as a necessary party to *any* litigation in which NeuroGrafix asserts the '360 patent against an alleged infringer, including governmental entities." Pltf. Sur-Reply at 1. The Plaintiffs also point to the course of performance between WRF and NG as evidence that the intent was to allow NG to sue the United States.

The Court is not persuaded by the Plaintiffs' attempts to expand the scope of the contract beyond the plain meaning of its language. "The fundamental principle in contract construction is to interpret the contract to carry out the intent of the parties, as that intent is *evidenced by the contractual language.*" RESTATEMENT (SECOND) OF CONTRACTS § 8:12 (1981) (emphasis added) (hereinafter, RESTATEMENT). The contractual language is quite clear: "Third Party" is

---

[6] The three signatures on the document are from representatives of WRF, UW and St. George's, and are dated May 23, 25 and 31, 1994, respectively.

limited to a set of entities, and plainly the Government does not fall within any of the classes of entity defined in the contract.

The Plaintiffs assert that the Recitals portion of the WRF-NG Agreement shows the parties' intent to allow NG to sue the Government. The provision cited states that "[t]he objective of this Amendment is to remove WRF as a necessary party to actions where Licensee asserts the Patent Rights against *Third Party* infringers and *related actions*." WRF-NG Agreement at 4 (emphasis added). Arguably, the "related actions" language could reasonably encompass litigation against non-Third Parties; just as reasonably, though, it could encompass only claims ancillary to the assertion of the patent rights against Third Parties. This does not clarify whether the intention was for WRF to transfer to NG the right to sue the United States.

Looking at other evidence, the Court can draw some degree of intent from the fact that the parties defined "Third Party" more narrowly than the ordinary meaning would allow. According the Merriam-Webster, a "third party" is "a person other than the principals." MERRIAM-WEBSTER DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/third%20party (last visited May 9, 2013). An example in the dictionary is "insurance against injury to third parties." *Id.* Thus, the ordinary meaning of the term "third party," as between WRF and NG, would encompass *anybody else*. The fact that the parties built their definition of "Third Party" from the ground up, rather than from the broadest ordinary meaning,[7] implies that the parties intended to place some limit on the term.

The Plaintiffs also point to the course of performance with WRF. "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." RESTATEMENT at § 202(4). Plaintiffs claim that, because WRF has not objected to the present lawsuit, it must have intended to grant NG the right to sue the United States. That may be so, but one lawsuit—this one—hardly constitutes "repeated occasions."

The Plaintiffs also note that this is not the first instance in which NG has asserted the '360 Patent against a governmental entity. They point the Court to *NeuroGrafix v. The Regents of the University of California*, Case No. 11-CV-07591-MRP (C.D. Cal.). While the Plaintiffs are certainly involved in a case against a governmental defendant, WRF was joined as a plaintiff in the complaint in that case. Thus, the *Regents* case tells us nothing about WRF's intent to allow NG to sue governmental entities on its own.[8]

In the UW-WRF Agreement, the Court finds support for the conclusion that WRF retained the right to sue governmental parties. Like the WRF-NG Agreement, the UW-WRF Agreement contains a definition of "Third Party": "corporate entities or individuals other than WRF or UW." UW-WRF Agreement at 2. As with the WRF-NG Agreement, the UW-WRF

---

[7] For example, the definition could have been "any entity other than WRF, Licensee, Affiliates and Sublicensees." This surely would have included the United States.

[8] The Court will not speculate on WRF's motives, but there is at least a reasonable basis for taking WRF's participation in the *Regents* case and its failure to appear here as an indication that WRF did not intend to allow NG to sue the United States.

Agreement grants the licensee (WRF) the right to bring suit against such Third Parties.  *Id.* at 7.  Although the Court makes no decision on this point, the UW-WRF Agreement indicates that at least WRF was aware that the United States could qualify as a Third Party: in an Article entitled "Third Party Rights," two of the three provisions deal with potential rights that the United States government may have in the technology being licensed.  *See* UW-WRF Agreement at 4.  The presence of the United States in these "Third Party Rights" provisions in the UW-WRF Agreement—and the complete lack of a similar language in the WRF-NG Agreement—tells the Court that WRF did not intend to grant NG the right to sue the United States.

All told, the only pieces of evidence that even arguably support an intention of the parties to transfer to NG the right to sue the United States are the ambiguous Recital provision and this lawsuit—neither of which constitute clear evidence of intent.  Nothing else indicates any intent to transfer the rights.  Because nothing solidly evidences any intent either way, the Court is left to return to the plain language of the definition adopted by the parties.  *See* Restatement at § 201(1) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.").  The parties expressly defined "Third Party" in a manner that does not include the United States, and NG received the right only to sue Third Parties.  Whatever the extent to which WRF has a right to sue the United States (and the Court makes clear that it makes no finding on that point), WRF did not pass that right on to NG.

This leaves the Plaintiffs in the unfortunate position of lacking standing in this Court since the United States is a necessary party here.  The Court will not speculate as to whether the Plaintiffs may recover via suit in some other forum, but their lack of standing necessitates dismissal of the pending action.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Plaintiffs do not possess the necessary interests in the '360 Patent to have standing to bring suit against the United States for infringement.  Thus, the United States' motion to dismiss is GRANTED.  The case is dismissed, and the Clerk shall mark the case accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge
